UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

CHRISTINA MATTHYS,                    )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )          No. 4:09-CV-23 JD
                                      )
WABASH NATIONAL,                      )
                                      )
          Defendant.                  )

Opinion and Order

On March 12, 2009, Plaintiff, Christina Matthys ("Matthys"), filed a complaint in this Court. [DE 1]. On February 22, 2010, Matthys filed an amended complaint. [DE 24]. In her amended complaint, Matthys alleges that Defendant, Wabash National ("Wabash"), interfered with Matthys's rights under the Family Medical Leave Act ("FMLA"), notably by denying her FMLA leave requests. Matthys additionally contends that Wabash retaliated against her for requesting FMLA leave and for filing an Indiana workers' compensation claim. On June 3, 2010, this case was reassigned to the undersigned for all purposes. [DE 27].

On June 25, 2010, Wabash filed a motion for summary judgment in relation to all of Matthys's claims. [DE 29]. On August 18, 2010, Matthys filed a response in opposition. [DE 34]. On September 9, 2010, Wabash filed a reply. [DE 36].

On September 10, 2010, Matthys filed a motion to strike Wabash's reply brief, claiming that Wabash's reply brief improperly exceeded the allowed page limits. [DE 37]. On September 24, 2010, Wabash filed a response and attached an amended reply brief for the Court's review. [DE 38]. On September 30, 2010, Matthys filed a reply. [DE 39]. Additionally, on the same day, Matthys filed a second motion to strike, requesting that Wabash's amended reply brief also

be stricken.  [DE 40].  On October 15, 2010, Wabash filed a response in opposition.  [DE 41].

## I.  Facts[1]

Wabash is a manufacturer of semi-trailers, and is headquartered in Lafayette, Indiana. *See* DE 31-1 at 2.   In September 2005, Matthys began her employment at Wabash through a temporary employment agency; and, on June 2, 2006, Matthys was hired as a full-time employee.  *See* DE 35-2 at 5.  Upon being hired to full-time employment at Wabash, Matthys received an employee handbook.  *See* DE 35-2 at 6.   The handbook contained Wabash's attendance policy, which assessed unexcused absences based on a points system.  *See* DE 35-2 at 5-7, 28-30.   Specifically, the policy dictated that employees accumulating twenty or more points in a twelve-month period would be subject to termination.  *See* DE 35-2 at 7, 30.  One point was assessed if an employee missed two-hours or less of work; and two points were assessed if an employee missed more than two-hours of work in a single day.  *See* DE 35-2 at 29; DE 35-3 at 6. An employee was not assessed points, however, if she missed work due to work-related injuries, medical leave, or FMLA leave, and the employee met the "appropriate eligibility and qualification requirements".  *See* DE 35-2 at 30; DE 31-1 at 3.  Wabash employees were responsible for tracking their own attendance points.  *See* DE 35-2 at 26; DE 35-3 at 6; DE 31-1 at 3.  Matthys admits being aware of the attendance policy and understanding her responsibility to personally track her attendance points.  *See* DE 35-2 at 7, 26

On or about February 22, 2007, Matthys requested FMLA leave for a non work-related medical condition, bronchitis.  *See* DE 35-2 at 7-8; DE 31-2 at 81-86.  Pursuant to making this FMLA leave request, Matthys met with Laura Smith ("Smith"), a Wabash Benefits Coordinator,

---

[1] The following facts are largely uncontested and are taken directly from the parties' briefs and the attached exhibits.  Those facts which are contested are noted in the Court's discussion.

in Wabash's FMLA benefits office. *See* DE 35-2 at 7-8, 17; DE 31-6 at 2-3. Smith assisted Matthys in identifying the paperwork that Matthys needed to complete and return in order to process Matthys's FMLA request. *See* DE 35-2 at 7-8; DE 31-2 at 81-86; DE 31-6 at 2-3. Matthys completed the requisite paperwork, obtained the necessary medical documentation and releases from her personal physician, and was, thereafter, granted FMLA leave, beginning February 21, 2007 and extending through March 5, 2007. *See* DE 35-2 at 7-10, 17; DE 31-2 at 81-86. Having received FMLA approval, Matthys was not assessed attendance points for that time period. *See* DE 35-2 at 10. Matthys does not challenge the manner is which Wabash handled her February 2007 FMLA leave request.

Shortly after Matthys returned from FMLA leave, on March 12, 2007, Matthys suffered a work-place injury to her right wrist. *See* DE 35-2 at 10. On or about the same day, Matthys reported the injury to Wabash; and Matthys filed an Indiana workers' compensation claim with Wabash's insurance carrier. *See* DE 35-2 at 10, 14; DE 35-6 at 14; DE 31-2 at 91. Matthys admits that, at the time of her wrist injury, she had previously accumulated fifteen attendance points. *See* DE 35-2 at 10.

The next day, on March 13, 2007, Matthys was sent to Wabash's medical department for an assessment of her injury. *See* DE 35-2 at 10. The medical department assigned Matthys a workplace restriction of "primarily one-handed work[] with injured hand assisting on light tasks" and sent Matthys back to work. *See* DE 35-2 at 10-11; DE 31-2 at 87. The medical department also instructed Matthys to return to the medical department every morning for an assessment of her wrist injury. *See* DE 35-2 at 11; DE 31-2 at 87. Matthys returned to work with the restriction. *See* DE 35-2 at 11. The following day, March 14, 2007, Matthys returned to the

medical department for an assessment and was given the same workplace restriction as the day before. *See* DE 35-2 at 11; DE 31-2 at 88. Later in the day, the medical department took an x-ray of Matthys's wrist, found no broken bones, and fitted Matthys's wrist with a splint. *See* DE 35-2 at 11; DE 35-4 at 17.

On March 15, 2007, Matthys returned to the medical department for another assessment. *See* DE 35-2 at 12; DE 35-4 at 4, 17. However, Matthys told EMT, Brad Hahn ("Hahn"), that she would not be returning to work that day but was, instead, going to her personal physician, Dr. Joel Mulder, for an assessment of her wrist. *See* DE 35-2 at 12; DE 35-4 at 2-4, 6, 14. Thereafter, Matthys went to her appointment with Dr. Mulder and was provided with a work restriction of no use of her right arm for two to three weeks. *See* DE 35-2 at 12; 35-4 at 14; DE 35-5 at 1; DE 31-2 at 89. Matthys returned to the medical department, later in the day on March 15, 2007, and furnished a copy of Dr. Mulder's work restriction. *See* DE 35-2 at 12; DE 35-4 at 6; DE 35-5 at 1; DE 35-6 at 8.

During this second meeting on March 15, 2007, Hahn informed Matthys that she could not return to work until she provided the medical department with medical records from Dr. Mulder. *See* DE 35-2 at 16, 20, 22-26; DE 35-4 at 8-9, 11, 14, 17; DE 35-5 at 1-2; DE 35-6 at 8. Additionally, Hahn told Matthys that the medical department did not have to follow Dr. Mulder's restrictions because Matthys had gone outside of the worker's compensation system. *See* DE 35-4 at 8, 17. Hahn gave Matthys a form to take to Dr. Mulder's office to obtain the requisite medical records. *See* DE 35-2 at 20, 25; DE 35-5 at 2. At the time, Wabash did not have a written policy requiring employees, who went outside the worker's compensation system for treatment, to provide copies of their medical records before returning to work. *See* DE 35-2

at 24; DE 35-3 at 5; DE 35-4 at 7-8, 10.  Nevertheless, Hahn explains that it was a practice that Wabash's medical department followed.  *See* DE 35-3 at 4, 9-10; DE 35-4 at 8.

Hahn additionally told Matthys that she would accrue attendance points until the medical department received the records.  *See* DE 35-3 at 9; DE 35-4 at 8, 14, 17.  Matthys asserts that she asked Hahn whether she could obtain FMLA leave to cover the time spent off work so that she would not be assessed additional attendance points.  *See* DE 35-2 at 16, 25.  Hahn's exact response to Matthys question is disputed.  Matthys asserts that Hahn responded that she could not apply for FMLA because "it was a paperwork issue, not a medical issue."  *See* DE 35-2 at 16; DE 35-5 at 2.   In contrast, Hahn states that he advised Matthys to take her medical paperwork to the FMLA office if she wanted to apply for FMLA leave.  *See* DE 35-4 at 10, 14. Despite Hahn's alleged rebuff, Matthys claims that she subsequently attempted to follow up with the FMLA benefits office, over the phone, but did not receive a response to her multiple voice mails.  *See* DE 35-2 at 16.  Matthys additionally notes that she did not meet with anyone from the FMLA Benefits Office regarding her wrist injury until later on March 23, 2007.  *See* DE 35-2 at 16.

Matthys did not return to work on March 15, 2007 and was, therefore, assessed two attendance points on account of her unexcused leave.  *See* DE 35-2 at 12 30; DE 31-1 at 3, 5. Instead, immediately following Matthys's second meeting with Hahn, Matthys went back to Dr. Mulder's office and requested that her medical records be sent to Wabash's medical department. *See* DE 35-5 at 2.  However, Matthys was informed by Dr. Mulder's office that the process of producing the records to Wabash could take seven to ten days.  *See* DE 35-5 at 2.

On March 16, 2007, Matthys returned to the medical department for another assessment.

*See* DE 35-2 at 12. Matthys claims that she, then, told Hahn that the medical records would take seven to ten days to arrive from Dr. Mulder's office, though Hahn disputes that he met with Matthys on March 16th. *See* DE 35-5 at 2; DE 35-4 at 6. Matthys did not return to work after the assessment on March 16, 2007. *See* DE 35-2 at 12. Matthys explains that she did not return to work because Wabash had not yet received her medical records from Dr. Mulder's office. *See* DE 35-2 at 25. Matthys was assessed two attendance points for her unexcused absence. *See* DE 31-1 at 3, 5. On March 19, 2007, Matthys did not return to work at all, allegedly because Wabash had still not received her medical records. *See* DE 35-2 at 13, 25. Matthys was assessed two attendance points for her unexcused absence, bringing her total attendance points to twenty-one. *See* DE 31-1 at 3, 5. During these two days, Matthys did not talk with anyone at Wabash to determine whether her medical records had been received. *See* DE 35-2 at 27.

On March 20, 2007, under Wabash's direction, Matthys went to the Regional Occupational Care Center for a full assessment of her wrist injury. *See* DE 35-2 at 13; DE 35-5 at 2; DE 31-2 at 90. Following the assessment, Matthys was given new work restrictions not to lift anything greater than fifteen pounds and to work within the limitations of the splint. *See* DE 35-2 at 13; DE 31-2 at 90. Matthys was otherwise permitted to continue working within the restrictions. *See* DE 35-2 at 13; DE 31-2 at 90. Matthys did not return to work on March 20, 2007, claiming that her shift had ended by the time that the assessment was completed. *See* DE 35-2 at 13; DE 35-5 at 2. Matthys was assessed two more attendance points for this day, bringing her total attendance points to twenty-three. *See* DE 31-1 at 3, 5. Matthys did, however, work on March 21, 2007 and March 22, 2007. *See* DE 35-2 at 13, 25.

On March 23, 2007, Kristia Fallon ("Fallon"), a Wabash Human Resources Supervisor,

met with Matthys and told Matthys that Wabash was considering terminating her because she had accumulated twenty-three attendance points.  *See* DE 35-2 at 17-18; DE 35-3 at 11,13-14. Matthys claims that she, then, told Fallon about her wrist injury, her corresponding workers' compensation claim, her request for FMLA leave to Hahn, and Hahn's instruction that Matthys stay home until she provided her medical records from Dr. Mulder.  *See* DE 35-5 at 2-3. Matthys asserts that she then became greatly upset.  *See* DE 35-2 at 19; DE 35-3 at 14.  As a result, Matthys contends that Fallon sent her home due to emotional distress and told Matthys that she would contact Matthys when she could return to work.  *See* DE 35-2 at 19, 25.  Fallon, however, disputes both of these assertions.  *See* DE 35-3 at 14.  Rather, Fallon contends that the decision regarding Matthys's work status and ability to return to work would have been a decision made by the medical department.  *See* DE 35-3 at 14.

At some point in the meeting, Fallon directed Matthys to Wabash's FMLA benefits office to address Matthys's inquiry regarding FMLA leave eligibility.  *See* DE 35-2 at 17; DE 35-3 at 7-8; DE 35-6 at 10.  Following the meeting with Fallon, Matthys claims that she went to the FMLA office and met with Linda Bunch ("Bunch"), another Wabash Benefits Coordinator, who allegedly told Matthys that she was "going to fill out paperwork".  *See* DE 35-2 at 16, 18, 22. However, Matthys does not recall completing an FMLA leave request, similar to the one in February 2007.  *See* DE 35-2 at 16.  In addition, Matthys' testimony is contradictory regarding whether she signed any documents during the alleged meeting with Bunch.  *Compare* DE 35-2 at 16, 18.  Further, Matthys has no documentary evidence to establish what may have been provided to her or what she may have signed at the alleged meeting with Bunch.  *See* DE 35-2 at 16.  Instead, Matthys opines that her memory regarding what exactly transpired at the meeting is

clouded because she was "very distraught at the time" and was "under extreme emotional distress". *See* DE 35-2 at 16, 18-19. Both Laura Smith and Linda Bunch, Wabash's FMLA Benefits Coordinators, claim that they have no knowledge of Matthys making a FMLA leave request in relation to her wrist injury and assert that they did not receive completed FMLA paperwork from Matthys in March 2007. *See* DE 31-6 at 3; DE 31-7 at 2.

Shortly after meeting with Matthys, Fallon spoke with Francine Walsh ("Walsh"), another Wabash Human Resources Supervisor, and discussed terminating Matthys's employment at Wabash due to attendance. *See* DE 35-3 at 8-9, 11. Thereafter, on March 27, 2007, Walsh called Matthys and informed Matthys that her employment at Wabash was terminated, effective March 23, 2007, on account of Matthys's accumulating too many attendance points. *See* DE 35-2 at 15; DE 31-5 at 6, 9. The following day, on March 28, 2007, Matthys received a letter from the agency responsible for investigating Matthys's Indiana workers' compensation claim, wherein Matthys's claim was denied. *See* DE 35-2 at 14, 26; DE 31-2 at 92.

Wabash's FMLA benefits office and Wabash's medical department occupy separate offices within the same building at the Lafayette facility. *See* DE 35-3 at 4; DE 35-4 at 10. Wabash contends that FMLA claims are made through the FMLA benefits office, consistent with the procedure followed by Matthys in February of 2007. *See* DE 35-4 at 3, 7; DE 35-4 at 10. Matthys states that she "somewhat" understood this to be the procedure for applying for FMLA leave. *See* DE 35-2 at 8. However, Matthys notes that Wabash also has a written FMLA policy, which states as follows,

> Associate must apply in writing with Occupational Health Service by 5:00 p.m. of
> the fourth (4th) day after the initial absence unless in extraordinary circumstances

such application is not feasible.

*See* DE 35-2 at 26, 35.  At the time of Matthys injury, there was no "Occupational Health

Service" at Wabash; instead, the parties agree that "Occupational Health Service" was

synonymous with the medical department.  *See* DE 35-3 at 5.

## II.  Wabash's Motion for Summary Judgment [DE 29]

### A.  Standard for Granting Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c)(2).  "In other words, the record must reveal that no reasonable jury

could find for the non-moving party."  *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16

F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the

absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Substantive law determines which facts are material; that is, which facts might affect the

outcome of the suit under the governing law."  *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010

WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party "may not rely merely

on allegations or denials in its own pleading; rather, its response must . . . set out specific facts

showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley Cnty. REMC*, 840

F.2d 405, 410 (7th Cir. 1988). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23) (holding that a failure to prove one essential element "necessarily renders all other facts immaterial")).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770; *Waldridge*, 24 F.3d

at 920. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

Thus, in responding to Defendants' motion for summary judgment, the Court must credit Matthys's version of the facts. In so doing, the Court does not vouch for the truth of those facts, but merely uses them to determine whether a genuine issue for trial exists. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002).

## B. Analysis

### 1. FMLA Interference

The bulk of the parties' briefs is spent addressing Matthys's claim that Wabash interfered with her exercise of rights under the Family and Medical Leave Act. Under the Family and Medical Leave Act ("FMLA"), employers are required to afford eligible employees twelve workweeks of leave per twelve-month period for a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D). *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005); *Bailey v. Pregis Innovative Packaging , Inc.*, 2009 WL 2970395 at *1 (N.D.Ind. 2009); *Mason v. St. Vincent Hosp. and Health Care Ctr.*, 2004 WL 3242339 at *3 (S.D.Ind. 2004). Further, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [FMLA rights]". 29 U.S.C. § 2615(a)(1). *Darst*, 512 F.3d at 908; *Kauffman*, 426 F.3d at 884; *Mason*, 2004 WL 3242339 at *3.

To prevail on an FMLA interference claim, a plaintiff must demonstrate that: (1) she is an eligible employee under the FMLA; (2) her employer is covered by the FMLA; (3) she is

entitled to FMLA leave[2]; (4) she provided sufficient notice of her intent to take leave; and (5) her employer improperly denied her benefits to which she was entitled. *Bailey*, 2009 WL 2970395 at *2; *Mason*, 2004 WL 3242339 at *4. The parties' dispute focuses primarily on the third element, whether Matthys was entitled to FMLA leave. Specifically, Wabash asserts that Matthys has failed to produce evidence of a "serious health condition" that would entitle her to leave. In response, Matthys contends that the Court should overlook her lack of evidence regarding this element and, instead, apply equitable estoppel to assume Matthys's entitlement to FMLA leave.

> a. Matthys can not establish that she suffered from a serious health condition and was, therefore, entitled to leave.

A "serious health condition" is defined by the applicable FMLA regulations as, "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical facility; or continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11) (internal punctuation omitted). *See also Darst*, 512 F.3d at 908; *Bailey*, 2009 WL 2970395 at *1; *Mason*, 2004 WL 3242339 at *5 ("This provision of the FMLA is aimed at genuinely serious and incapacitating conditions. It was not intended to mandate, as a matter of federal law, a uniform national sick leave policy for minor or temporary illnesses and discomforts.").

Matthys has not presented any evidence that she received inpatient care in a hospital or other residential medical care facility. Consequently, in order to establish a *prima facie* FMLA

---

[2] When an employee alleges a deprivation of the substantive guarantees of the FMLA, the employee must establish, by a preponderance of the evidence, an entitlement to the disputed leave. *Darst*, 512 F.3d at 908; *Mason*, 2004 WL 3242339 at **4-5 (S.D.Ind. 2004) ("[I]t is not sufficient for an employee to merely assert that he suffered from a serious health condition; a claimant must provide evidence of his serious health condition.").

interference claim, Matthys must submit evidence to establish that she was receiving "continuing treatment by a health care provider". *Mason*, 2004 WL 3242339 at \*5. The regulations define "a serious health condition involving continuing treatment by a health care provider", in parts relevant to Matthys' wrist injury, to include both:

> Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
> . . . [and]
> Conditions requiring multiple treatments. Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, for:
>> (1) Restorative surgery after an accident or other injury; or
>> (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

29 C.F.R. §§ 825.115(a); (e). Matthys has not submitted evidence that she needed to have restorative surgery on account of her wrist injury. As a result, under either category, Matthys must, instead, submit evidence of a period of incapacity lasting more than three, consecutive days to establish that she was receiving continuing treatment. *Compare Mason*, 2004 WL 3242339 at \*6 (similarly noting that a plaintiff must establish a period of incapacity under the, then applicable, FMLA statutes and regulations defining a serious health condition); *Kauffman*, 426 F.3d at 886 (same).

Matthys has presented no evidence to establish that she had a period of incapacity, and can, therefore, not establish that she suffered from a serious health condition, as defined by the regulations. Instead, the evidence establishes that Matthys was able to work, albeit with some restrictions from Wabash's medical department, on the two days, immediately following her wrist injury. *See* DE 35-2 at 11, DE 31-2 at 88. In addition, although Dr. Mulder's note, submitted on the third day after Matthys's injury, indicated that Matthys was restricted from performing work with her right arm for several weeks, Dr. Mulder did not prevent Matthys from working within the restriction. *See* DE 35-2 at 12; DE 35-5 at 1; DE 31-2 at 89; DE 35-6 at 8. Further, after Matthys's follow-up appointment at the Regional Occupational Care Center, a week after Matthys's injury, Matthys was again able to work with new restrictions. *See* DE 35-2 at 13; DE 31-2 at 90. Indeed, Matthys admits that neither Wabash nor Dr. Mulder issued any restrictions that rendered her medically unable to work on account of her wrist injury. *See* DE 35-2 at 12, 19-20, 23. Finally, even after several years of litigation and months of discovery, Matthys still presents no evidence to demonstrate that she was medically unable to work on account of her wrist injury.

Matthys can point to no evidence that she experienced a period of incapacity on account of her wrist injury. Instead, the evidence demonstrates that Matthys was given work restrictions by three different medical providers but was, otherwise, physically able to complete her work. Such evidence does not establish that Matthys suffered from an FMLA-qualifying, serious health condition. *See Ridings v. Riverside Med. Cntr.*, 537 F.3d 755, 770 (7th Cir. 2008) (noting that a plaintiff can not establish entitlement to FMLA leave if she was fulfilling the requirements of her job despite her medical condition); *Mason*, 2004 WL 3242339 at **5-7 (concluding that a

plaintiff's failure to submit evidence from a medical professional demonstrating that she was unable to work made it impossible for the plaintiff to factually establish that she suffered from a serious health condition and, therefore, a *prima facie* case of FMLA interference); *Niesse v. Gen. Elec. Appliances*, 2001 WL 290382 at *7 (S.D.Ind. 2001) ("A release to work without restrictions is not consistent with a request for FMLA leave due to the employee's serious health condition that makes her unable to perform her job.").

As a result, because Matthys can not factually establish that she suffered from a serious health condition, Matthys can also not legally establish a *prima facie* claim of FMLA interference. *See Darst*, 512 F.3d at 910-12 (holding that a plaintiff's failure to submit evidence of continuing treatment by a health care provider, as defined by the regulations, was fatal to a plaintiff's FMLA interference claim, regardless of the defendant's alleged failure to allow the plaintiff an opportunity to cure medical certification deficiencies); *Murphy v. N. Am. Lighting*, 540 F.Supp.2d 1018, 1022-23 (C.D.Ill. 2008) (holding that there was no sustainable FMLA interference claim wherein a plaintiff could not establish that her daughter suffered from a serious health condition, as defined by the regulations); *Mason*, 2004 WL 3242339 at **5-7 (citing numerous cases wherein it was held that a plaintiff must submit medical evidence of incapacity to establish an FMLA-qualifying, serious health condition and can not solely rely on his or her own testimony).

> b. Equitable estoppel is not applicable to overcome Matthys's inability to factually establish that she suffered from a serious health condition.

Matthys apparently concedes that she cannot factually establish that she suffered from a serious health condition and, instead, spends the bulk of her response brief trying to convince the Court that equitable estoppel should be employed to overcome her inability to factually establish

her entitlement to FMLA leave. Specifically, Matthys argues that the use of equitable estoppel is justified in this circumstance because Hahn prevented Matthys from returning to work and because Wabash did not permit Matthys fifteen days to provide FMLA certification[3] from Dr. Mulder before terminating her employment.

In making this argument, Matthys primarily relies on a Seventh Circuit case involving the first, rather than the third, element of a *prima facie* FMLA interference case, FMLA eligibility. *Dormeyer v. Comerica Bank-Ill.*, 223 F.3d 579, 582-83 (7th Cir. 2000). Although the Seventh Circuit denied the applicability of equitable estoppel in that particular case, the Court opined that, "an employer who by his silence misled an employee concerning the employee's entitlement to family leave might, if the employee reasonably relied and was harmed as a result, be estopped to plead the defense of ineligibility to the employee's claim of entitlement to family leave." *Dormeyer*, 223 F.3d at 582-83 (denying applicability of equitable estoppel in a case wherein an employer did not respond to an, otherwise-ineligible, employee's request for FMLA leave).

Matthys's estoppel argument is unpersuasive for a number of reasons. To begin, Matthys has not identified any case, post-*Dormeyer*, in which the Seventh Circuit has found equitable estoppel to be applicable in an FMLA interference case; and only a few District Courts in the

---

[3] When an employee requests leave for a serious health condition, the employer may request certification by the employee's health provider. 29 C.F.R. § 825.305(a). *Simpson v. Office of the Chief Judge of the Cir. C. of Will Cnty.*, 559 F.3d 706, 700 (7th Cir. 2009); *Kauffman*, 426 F.3d at 886. Certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. *Kauffman*, 426 F.3d at 886. If the employee fails to submit certification of her condition in a timely manner, then an employer is entitled to deny FMLA leave. 29 C.F.R. § 825.313. *Simpson*, 559 F.3d at 700. Under the regulations, if an employer finds a certification incomplete, the employer must advise the employee of this fact and provide the employee a reasonable opportunity to cure any deficiency in the certification. *Darst*, 512 F.3d at 910. 29 C.F.R. § 825.305(d). In the case of an unforeseeable, serious health condition, an employee has "15 calendar days after the employer's request" to submit certification from her physician. *Kauffman*, 426 F.3d at 885.

Circuit have applied estoppel as to FMLA eligibility, an element which is not an issue here. *See Niesse*, 2001 WL 290382 at *8 (noting that, although the Seventh Circuit had previously discussed potential applicability of estoppel to an FMLA claim, the Circuit had never actually applied it to any particular case). *See also Peters v. Gilead Scis., Inc.*, 533 F.3d 594, 599-600 (7th Cir. 2008) (Seventh Circuit reversed a lower court decision that had found equitable estoppel to be applicable to negate an FMLA eligibility defense, concluding that it was not necessary for the lower court to apply equitable estoppel wherein a state law promissory estoppel or contract claim might have otherwise been applicable).

In addition, there is at least one case, post-*Dormeyer*, in which the Seventh Circuit has found equitable estoppel to be not applicable, wherein an employee plaintiff could not factually establish entitlement to FMLA leave. *See Darst*, 512 F.3d at 910-12 (holding that a plaintiff's failure to obtain evidence of continuing treatment, an element of a serious health condition, was fatal to a plaintiff's FMLA interference claim, regardless of the plaintiff's allegations that the defendant failed to allow the plaintiff an opportunity to cure medical certification deficiencies. In so ruling, the 7th Circuit denied the plaintiff's estoppel arguments and, instead, placed an affirmative duty on the plaintiff to present sufficient evidence to establish a serious health condition, as defined by the regulations, in order to overcome a summary judgment motion on an FMLA interference claim).

Further, the Court notes that in nearly every case within the Circuit, in which estoppel is discussed in relation to an FMLA interference claim, District and Circuit levels alike, the

disputed element of the *prima facie* case was FMLA eligibility[4], an element not challenged by

Wabash in the immediate case. *See e.g. Dormeyer*, 223 F.3d at 582-83 (denying applicability of

equitable estoppel in a case wherein a plaintiff had not worked enough hours to be eligible for

FMLA leave); *Sullivan v. Fort Wayne Foundry Corp.*, 2006 WL 1660590 at *6-7 (N.D.Ind

2006) (denying applicability of equitable estoppel in a case wherein a plaintiff's use of more

FMLA leave than allowed by the statute made him ineligible for additional FMLA leave); *Allen

v. Fort Wayne Foundry Corp.*, 2005 WL 234 7266 at **9-10 (N.D.Ind. 2005) (granting

applicability of estoppel argument to preclude an employer's FMLA-eligibility defense, wherein

the employer previously told the, otherwise-ineligible, employee that he was being afforded

FMLA leave to cover his absences); *Lonergan v. Cargo Tech. Inc.*, 2009 WL 3152562 (N.D.Ill.

2009) (denying applicability of equitable estoppel in a case wherein a plaintiff had not worked

enough hours to be eligible for FMLA leave); *Reaux v. Infohealth Mgmt. Corp.*, 2009 WL

635468 at **3-4 (N.D.Ill. 2009) (granting applicability of estoppel argument to preclude an

employer's FMLA-eligibility defense, wherein the employer previously told the, otherwise-

ineligible, employee that she was being afforded FMLA leave to cover his absences); *Weidner v.

Unity Health Plans Ins. Corp.*, 606 F.Supp.2d 949, 956-58 (W.D.Wis. 2009) (denying

applicability of equitable estoppel to escape employer's eligibility defense, wherein a employee

presented no evidence that she would have made efforts to cure her ineligibility, by working

_____

[4] To be considered an "eligible employee" under the FMLA, an employee must demonstrate that, on the date which FMLA leave is to commence, the employee: (1) has been employed for a total of at least 12 months by the employer, and (2) has been employed for at least 1,250 hours of service with such employer during the previous 12-month period. 29 U.S.C. § 2611(2); 29 C.F.R. § 825.110(a). *Bailey*, 2009 WL 2970395 at *3 (holding a plaintiff to be ineligible for FMLA leave wherein the plaintiff's leave exceeded twelve weeks within a twelve month period); *Lonergan v. Cargo Tech. Inc.*, 2009 WL 3152562 at *4 (N.D.Ill. 2009) (holding a plaintiff to be ineligible for FMLA leave wherein the plaintiff had not accumulated enough work hours); *Sewall v. Chi. Transit Auth.*, 2001 WL 40802 at *4 (N.D.Ill. 2001).

more hours before taking leave, had she been given the opportunity to do so in advance);

*Murphy v. N. Am. Lighting*, 540 F.Supp.2d 1018, 1022 n.2 (C.D.Ill. 2008) (denying applicability

of equitable estoppel in a case wherein a plaintiff had not worked enough hours to be eligible for

FMLA leave and further noting, "even if [the plaintiff] can meet the requirements of equitable

estoppel as to her *eligibility*, she must still show that she was otherwise *entitled* to benefits")

(emphasis in original); *Butler v. Ill. Bell Tel. Co.*, 2006 WL 1049655 at **9-10 (N.D.Ill. 2006)

(granting applicability of estoppel argument to preclude an employer's FMLA-eligibility

defense, wherein the employer expressly told the, otherwise-ineligible, employee that she was

afforded FMLA leave to cover her medical absences).

    Indeed, even the cases cited by Matthys in this regard address the applicability of

equitable estoppel in relation to FMLA *eligibility* rather than FMLA *entitlement*. *See e.g.*

*Minard v. ITC Deltacom Commc'n, Inc.*, 447 F.3d 352, 359-60 (5th Cir. 2006) (an employer

found to be equitably estopped from raising an eligibility defense wherein the employer

previously told an, otherwise-ineligible, employee that she was eligible for FMLA leave); *Duty

v. Norton -Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) (same); *Woodford v. Cmty.

Action of Greene Cnty., Inc.*, 268 F.3d 51, 57 (2nd Cir. 2001) (denying applicability of equitable

estoppel in a case wherein a plaintiff had not worked enough hours to be eligible for FMLA

leave).  Notably, and in stark contrast, Matthys cites no cases, within the Circuit, in which

estoppel was found applicable to cover the element of entitlement in an FMLA interference

claim; and the Court can find no such case.

    Instead, the closest authority that Matthys can identify in support of her argument is a

Sixth Circuit case that did not decide whether estoppel should be applied to preclude an

employer's eligibility and entitlement defenses, on account of the employer's failure to inform the employee that his medical certification was deficient, but, instead, remanded the issue for a lower court determination. *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336-37 (6th Cir. 2005). However, even assuming this out-of-Circuit case supports the applicability of equitable estoppel in relation to an employee's factual inability to establish entitlement to FMLA leave, the Court is not persuaded that *Sorrell* has precedential value herein, given the 7th Circuit's refusal to apply equitable estoppel in the face of a nearly identical challenge in *Darst*.[5] *See Darst*, 512 F.3d at 910-12 (rejecting a plaintiff's assertion that equitable estoppel should be applied on account of the defendants alleged failure to allow the plaintiff an opportunity to cure medical certification deficiencies, wherein the plaintiff could not establish that he could have cured the deficiencies if given an opportunity to do so). Like the plaintiff in *Darst*, Matthys has not shown that she could have established that she suffered from a serious health condition, had she been afforded fifteen days to certify that her wrist injury met the criteria. *Id.* Indeed, even now, Matthys still cannot factually establish that she suffered from a serious health condition. *Id.* (additionally rejecting the plaintiff's contention that his doctors could have testified regarding his serious health condition if the plaintiff had known sooner that his entitlement to FMLA leave was going to be challenged, wherein the plaintiff was aware early-on that he was being denied FMLA leave and, yet, failed to preserve relevant evidence at that time).

Nevertheless, even if the Court were to consider estoppel to be legally applicable to the

---

[5] Further, as discussed in more detail below, the facts of *Sorrell* are easily distinguishable from the facts in Matthys's case. Specifically, in *Sorrell* the employer made prior assurances to the employee that he was both FMLA eligible and that his leave was covered by the FMLA. *See Sorrell*, 395 F.3d at 334, 336-37. In the immediate case, neither fact is established. Instead, Matthys, herself, states that Wabash, through Hahn, told her that her anticipated leave would not be covered by the FMLA. *See* DE 35-2 at 16, 25; DE 35-5 at 2.

element of FLMA entitlement, estoppel would still not be factually applicable in the immediate case. In so concluding, the Court notes that in every case, identified by Matthys and the Court, wherein estoppel was applied within the context of an FMLA interference case, there was an affirmative representation of FMLA eligibility by the defendant employer to the plaintiff employee on a previous occasion. *See e.g. Peters v. Gilead Scis., Inc.*, 2006 WL 2054373 at **8-11 (S.D.Ind. 2006) (reversed in applicable part by *Peters v. Gilead Scis., Inc.*, 533 F.3d 594, 599-600 (7th Cir. 2008)); *Allen*, 2005 WL 234 7266 at **9-10; *Reaux*, 2009 WL 635468 at **3-4; *Butler*, 2006 WL 1049655 at **9-10. *See also Minard*, 447 F.3d at 359-60; *Duty*, 293 F.3d at 493-94.

> [T]he doctrine of equitable estoppel itself may apply *where an employer who has initially provided notice of eligibility* for leave later seeks to challenge that eligibility. Thus, future employees who rely to their detriment upon *the assurance of their employer that they qualify for leave under the FMLA* may have recourse to the doctrine of equitable estoppel even without an enforceable regulation protecting their right to rely upon an employer's notice of eligibility.

*Woodford*, 268 F.3d at 57 (emphasis added).

On the other hand, the Court notes that, in nearly every case, identified by Matthys and the Court, wherein such an affirmative representation was not made by the Defendant employer, estoppel was found to be not applicable, as there was no detrimental or reasonable reliance on the part of the plaintiff employee. *See e.g. Lonergan*, 2009 WL 3152562 at *4 (concluding that estoppel was not applicable when an employer did not promise FMLA leave to the plaintiff employee); *Murphy*, 540 F.Supp.2d at 1022 n.2 (concluding that estoppel was not applicable to establish entitlement to FMLA leave when a plaintiff did not receive advanced approval of FMLA leave from her employer prior to taking leave); *Sullivan*, 2006 WL 1660590 at * 7 (concluding that estoppel was not applicable when an employer specifically informed a plaintiff

of the status of his remaining FMLA leave and his ineligibility for re-certification for additional FMLA leave prior to the plaintiff exceeding his leave time); *Sewall v. Chi. Transit Auth.*, 2001 WL 40802 at *7 (N.D.Ill. 2001) (concluding that estoppel was not applicable to escape an employer's eligibility defense, despite the employer's silence regarding FMLA eligibility, wherein the plaintiff employee knew or should have known that he was not eligible for FMLA leave, and further concluding that, under such circumstances, there was no reasonable or detrimental reliance by the employee that he was FMLA-eligible).

In Matthys's case, there is absolutely no evidence that anyone at Wabash ever represented to Matthys that her leave would be FMLA qualifying. Instead, the opposite is true. Indeed, it is Matthys, herself, who states that Hahn, who represented Wabash's medical department, told Matthys that she could not obtain FMLA leave to cover her absences. *See* DE 35-2 at 16, 25; DE 35-5 at 2. Under such facts, it is clear that this is not a case where an employer's "silence misled an employee concerning the employee's entitlement to family leave" or a case where an employee's detrimental reliance is both reasonable and anticipated. Rather, the facts establish only one reasonable conclusion, that Matthys knew or should have known that she was not entitled to FMLA leave to cover her absences, given Matthys's testimony that Hahn told her that her leave would not be covered by the FMLA.[6] *Compare Murphy*, 540 F.Supp.2d at 1021-22 (concluding that a plaintiff could not establish reasonable reliance, given that the

---

[6] Matthys does not contend, and the evidence does not suggest, that Hahn's requirement that Matthys provide her medical records was utilized in her case to determine whether Matthys was entitled to FMLA leave. Consequently, Matthys can not be said to have reasonably considered her subsequent absences to be covered by FMLA leave; and, indeed, she does not appear to make that argument. Instead, Matthys contends that Hahn's preventing Matthys from returning to work is sufficient, by itself, to invoke equitable estoppel against Wabash's challenge that she was not entitled to FMLA leave. There is no analogous case law to support the application of equitable estoppel to save Matthys's FMLA interference claim upon such a theory, likely because the factual circumstance of this case does not foreseeably give rise to reasonable and detrimental reliance regarding FMLA entitlement. *See Butler*, 2006 WL 1049655 at *9 (identifying the three elements of a equitable estoppel).

plaintiff should have known that she did not have the requisite hours to be eligible for FMLA leave); *Sullivan*, 2006 WL 1660590 at * 7 (concluding that there was no detrimental reliance wherein an employer specifically informed a plaintiff of the status of his remaining FMLA leave and his ineligibility for re-certification, prior to the plaintiff exceeding his FMLA leave time); *Sewall v. Chi. Transit Auth.*, 2001 WL 40802 at *7 (N.D.Ill. 2001) (concluding that there was no reasonable reliance, wherein a plaintiff knew or should have known that he was not eligible for FMLA leave). Therefore, the Court concludes that, even if estoppel were applicable in relation to the element of FMLA entitlement, estoppel would not apply in this case.

> c. Matthys also can not establish that she provided sufficient notice of FMLA leave.

To a lesser degree, the parties also contest whether Matthys provided sufficient notice to Wabash of her intent to take FMLA leave. The Court concludes that Matthys has also failed to submit sufficient evidence to establish that she provided Wabash with a probable basis for FMLA-qualifying leave.

In a case, such as this one, where need for leave is not foreseeable in advance, the FMLA regulations place the burden on the employee to notify his employer of the anticipated duration of the leave "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). *See also Righi v. SMC Corp.*, 632 F.3d 404, 406, 410 (7th Cir. 2011) (noting that the regulations further specify that notice in such circumstances should be given no more than one or two working days of learning of the need for leave); *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 951-52 (7th Cir. 2004) ("Conditioning the right to take FMLA leave on the employee giving the required notice to his employer is the quid pro quo for the employer's partial surrender of control over his work force."). If the employee fails to give his

employer proper notice, the employer is under no duty to provide FMLA leave. *Righi*, 632 F.3d at 408, 410 ("an employee's failure to comply with the notice requirements of the FMLA and its regulations forecloses an FMLA interference claim because the employee did not fulfill her obligations in order to be protected") (internal punctuation omitted).

It does not take much for an employee to invoke his FMLA rights. *Id.* at 409. Indeed, an employee "need not expressly assert rights under the FMLA or even mention the FMLA". 29 C.F.R. § 825.303(b); *Righi*, 632 F.3d at 409. Nevertheless, the notice requirement is not satisfied by an employee merely demanding leave. *Aubuchon*, 359 F.3d at 952. Instead, an employee must provide his employer a probable basis for FMLA leave. *Righi*, 632 F.3d at 409; *Aubuchon*, 359 F.3d at 952-53 ("[An employee] doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave."); *Niesse*, 2001 WL 290382 at **6-7. In order to establish a probable basis for unforeseeable FMLA leave, the content of the employee's notice must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request", such as communicating "that a condition renders the employee unable to perform the functions of the job". 29 C.F.R. § 825.303(b).

Once an employee properly invokes his FMLA rights by alerting his employer to his need for potentially-qualifying leave, the regulations shift the burden to the employer to take certain affirmative steps to process the leave request, such as requesting additional information from the employee's medical provider, when necessary, to confirm the employee's entitlement. *Righi*, 632 F.3d at 409-10; *Aubuchon*, 359 F.3d at 953. 29 C.F.R. §§ 825.301; 825.303(b).

The facts, when viewed in a light most favorable to Matthys, suggest that Matthys

inquired regarding FMLA leave on at least one of four occasions.  For instance, although the particulars of Matthys's conversation with Hahn on March 15, 2007 are disputed, the evidence suggests that FMLA leave was at least minimally discussed in relation to Matthys's anticipated absences thereafter.  *Compare* DE 35-2 at 16, 25; DE 35-5 at 2 and DE 35-4 at 10, 14.  Either in response to Hahn's instruction to apply with the FMLA Benefits Office or recognizing that Hahn was not the proper person with whom Matthys needed to make her request for FMLA leave, Matthys asserts that she subsequently left voice mails with the FMLA Benefits Coordinators, by way of follow up.  *See* DE 35-2 at 16.  The facts also suggest that Matthys inquired regarding FMLA leave during her meeting with Fallon on March 23, 2007 and, immediately following the meeting, with Wabash's FMLA Benefits Coordinator, Linda Bunch.  *See* DE 35-2 at 16-18, 22; DE 35-3 at 7-8; DE 35-6 at 10.

Nevertheless, although the evidence suggests that Matthys may have minimally-inquired whether FMLA leave could be used to cover her absences, the facts do not establish that Matthys provided a probable basis for FMLA leave on any occasion.  For instance, as already discussed, at the time Matthys discussed FMLA leave with Hahn on March 15, 2007, neither Wabash's medical department nor Dr. Mulder had placed Matthys on medical restrictions that prevented Matthys from working.  At least one court in this Circuit has found that "[a] release to work without restrictions" is insufficient to establish notice of a request for FMLA leave due to the employee's serious health condition that makes her unable to perform her job."  *See Niesse*, 2001 WL 290382 at *7.  *See also Aubuchon*, 359 F.3d at 953 ("unless the employer already knows that the employee has an FMLA-authorized ground for leave, the employer must communicate the ground to him; he cannot just demand leave") (internal citations omitted).

Similarly, although Matthys may have additionally inquired regarding FMLA leave with Wabash's Benefits Coordinator on March 23, 2010, the facts do not establish that Matthys actually sought FMLA leave at that time. Specifically, Matthys does not recall completing an FMLA leave request; the FMLA Benefits Coordinators assert that they had no knowledge that Matthys made an FMLA request and that they did not receive FMLA paperwork from Matthys; and Matthys admits having no documents to suggest that she attempted to make an FMLA leave request at that time. *See* DE 35-2 at 16, 18; DE 31-6 at 3; DE 31-7 at 2. Further, Matthys asserts that her memory regarding what exactly transpired at the meeting is clouded because she was "very distraught at the time" and was "under extreme emotional distress". *See* DE 35-2 at 16, 18-19. Matthys need not "expressly assert rights under the FMLA or even mention the FMLA." *Righi*, 632 F.3d at 409. However, at least one other court in this District, has held that an employee's "cloudy recall" regarding whether she actually made a FMLA leave request is "too flimsy" to establish a triable issue of fact regarding notice of FMLA leave. *See Bailey*, 2009 WL 2970395 at *4. The Court considers the *Bailey* holding to be instructive in this circumstance, and considers Matthys's facts to be similarly "too flimsy" to establish that she gave notice, let alone a sufficient probable basis, for FMLA-qualifying leave. *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d at 952-53 ("[An employee] has to give the employer enough information to establish probable cause . . . to believe that he is entitled to FMLA leave.").

### 2. FMLA Retaliation

In addition to asserting a claim for FMLA interference, Matthys also alleges a claim for FMLA retaliation. The FMLA makes it unlawful for an employer to discharge or discriminate against an individual for inquiring about FMLA leave of for raising an FMLA interference

claim. 29 U.S.C. § 2615(a)(2); (b). *Kauffman*, 426 F.3d at 884 (noting that these provisions have been construed to create a cause of action for retaliation under the FMLA); *Sewall*, 2001 WL 40802 at *8. A plaintiff claiming FMLA retaliation may make her case under the same direct or indirect methods of proof that is utilized in Title VII cases. *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009); *Bailey*, 2009 WL 2970395 at *3; *Mason*, 2004 WL 3242339 at *4. Matthys contends that she is proceeding solely under the direct method of proof.

To survive summary judgment under the direct method, a plaintiff employee must present evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Simpson v. Office of the Chief Judge of the Cir. C. of Will Cnty.*, 559 F.3d 706, 717 (7th Cir. 2009); *Smith*, 560 F.3d at 702 ("[a]n employee proceeding under the direct method must demonstrate that her employer intended to punish her for requesting or taking FMLA leave"); *Bailey*, 2009 WL 2970395 at *3; *Sewall*, 2001 WL 40802 at *8. The employee may demonstrate retaliation by presenting either direct or circumstantial evidence. *Simpson*, 559 F.3d at 717. Direct evidence usually involves some form of admission by the decision maker. *Simpson*, 559 F.3d at 717; *Sewall*, 2001 WL 40802 at *9. In contrast, circumstantial evidence is evidence that allows the fact finder to infer intentional discrimination by the decision maker. *Simpson*, 559 F.3d at 717.

Matthys's retaliation claim is doomed from the start, given her inability to establish a *prima facie* case of FMLA interference. Because Matthys can not demonstrate that she was entitled to FMLA leave, she can not be said to have engaged in protected activity; and, therefore, Matthys can not demonstrate a sustainable claim of FMLA retaliation. *See Smith*, 560 F.3d at 702; *Mason*, 2004 WL 3242339 at *7.

However, even if this Court considered the first two elements to be satisfied, Matthys still cannot demonstrate a causal connection between her request for FMLA leave and her termination. Indeed, Matthys's only argument in this regard is that the persons responsible for her termination, Wabash's Human Resources Supervisors Fallon and Walsh, were aware of Matthys's requests for FMLA leave. This argument is unpersuasive for two reasons.

First, Matthys does not proffer any case law support to suggest that a decision maker's mere knowledge of an employee's FMLA leave request is sufficient to demonstrate a retaliatory motive. Mere temporal proximity between an employee's exercise of protective activity and her firing is not enough to establish a genuine issue of material fact. *Bailey*, 2009 WL 2970395 at *4. *See also Simpson*, 559 F.3d at 713.

Second, even assuming that Fallon and Walsh were aware of Matthys's FMLA inquiry, the evidence clearly suggests that such knowledge came *after* Fallon had already begun disciplinary proceedings on account of Matthys's poor work attendance. Specifically, the evidence establishes that Fallon met with Matthys to address Matthys's attendance problems; and, it was not until sometime during this meeting, that Matthys first made Fallon aware of her FMLA inquiry. *Compare* DE 35-2 at 17-18; DE 35-3 at 11,13-14; and DE 35-5 at 2-3 ("On March 23, 2007, . . . I informed Fallon that I suffered a workplace injury . . . [and] that Hahn had told me . . . that I was ineligible for FMLA leave"). The chronology of these events seriously undercuts Matthys's ability to establish that her FMLA inquiries were the "but for" reason for her termination. *See Ridings*, 537 F.3d at 774 (noting that a plaintiff's "suspicious timing" argument was undercut when the defendant employer had already begun disciplinary action prior to his alleged knowledge of the plaintiff's protected activity). *See also Sewall*, 2001 WL 40802

28

at *8 ("the causal link between the protected activity and adverse employment action is demonstrated by showing that the employer would not have taken the adverse action 'but for' the employee's protected activity").

### 3. Retaliatory Discharge

Finally, Matthys also asserts a claim for retaliatory discharge on account of her filing of an workers' compensation claim.[7] In general, Indiana adheres to the employment-at-will doctrine, whereby an employment contract is terminable at the will of either party. *Hudson v. Wal-Mart Stores*, 412 F.3d 781, 785 (7th Cir. 2005); *Crye v. Caterpillar, Inc.*, 2008 WL 5111349 at *7 (N.D.Ind. 2008) ("employers can generally terminate an employment at any time, for a good reason, bad reason, or no reason at all"); *Settele v. Walgreens Co.*, 2007 WL 1970954 at *3 (N.D.Ind. 2007). However, the Indiana Supreme Court has carved out an exception to this rule, acknowledging a cause of action for employees discharged in retaliation for filing a workers' compensation claim. *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425,428 (Ind. 1973). *See also Hudson*, 412 F.3d at 785 (noting that such claims are called "*Frampton*" claims in Indiana courts); *Crye*, 2008 WL 5111349 at *7.

Like other retaliation causes of action, to establish a *prima facie* case of retaliatory discharge, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she

---

[7] Although it is not required to, the Court elects to exercise supplemental jurisdiction over Matthys's state law claim. The Seventh Circuit has recognized that federal courts' adjudication of state law claims is warranted when: (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244,1251 (7th Cir. 1994).

The Court finds at least the latter two of these grounds to be applicable in this case. In particular, the Court notes that Matthys's state-law claim has been pending in this Court since March of 2009 and that the parties have already completed a nine-month discovery period. Further, as discussed in greater detail below, based on the evidence presented, the Court concludes that Matthys cannot establish either causation or pretext, in regards to her *Frampton* claim.

suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Settele*, 2007 WL 1970954 at *3 (noting that a plaintiff may submit either direct or indirect evidence to establish the requisite causal connection). *See also Hudson*, 412 F.3d at 785; *Crye*, 2008 WL 5111349 at *7. If the plaintiff establishes these elements, the defendant has the burden to produce a legitimate, nondiscriminatory reason for its actions. *Settele*, 2007 WL 1970954 at *3. Once such a reason is proffered, the plaintiff must prove that the employer's stated reason for its action is pretextual. *Id.*

For the same reasons that Matthys can not establish a causal connection for FMLA retaliation, Matthys also can not establish a causal connection for retaliatory discharge. Specifically, Matthys can not create an inference of retaliatory intent based solely on Fallon and Wabash's alleged knowledge that Matthys had filed a workers' compensation claim. "Causation may not be inferred merely from evidence that: (1) the employee filed for benefits, and (2) was fired.*" Settele*, 2007 WL 1970954 at *3. *See also Hudson*, 412 F.3d at 787 ("timing, standing alone, does not create a genuine issue as to casual connection"); *Juarez v. Ameritech Mobile Commc'n, Inc.*, 957 F.2d 317, 321 (7th Cir. 1992); *Crye*, 2008 WL 5111349 at *7. Once again, the evidence establishes that Fallon did not become aware of Matthys's workers' compensation claim until *after* Fallon had begun disciplinary proceedings against Matthys on account of Matthys's poor work attendance. *See* DE 35-5 at 2-3 ("On March 23, 2007, . . . I informed Fallon that I suffered a workplace injury . . . and applied for workers' compensation benefits."). The intervening event of Matthys's poor attendance and Fallon's after-the-fact knowledge of Matthys's workers' compensation claim belie Matthys's assertions that Fallon terminated her employment on account of Matthys's filing a workers' compensation claim. *See Crye*, 2008 WL

5111349 at *7 (intervening events have the potential to undercut a plaintiff's asserted causal connection).

Further, even if Matthys could establish a causal connection and, therefore, a *prima facie* case of retaliatory discharge, Matthys can not establish that Wabash's asserted reason for terminating her employment was pretextual. To establish pretext, Matthys must establish that Wabash's explanation for her termination was "either dishonest or patently inconsistent with the evidence before the court." *Hudson*, 412 F.3d at 785 ("[A] plaintiff's speculation is insufficient to establish pretext"); *Crye*, 2008 WL 5111349 at *7. In addition, Matthys must also demonstrate that Wabash discharged her "solely" on account of Matthys's exercise of a statutorily conferred right. *Settele*, 2007 WL 1970954 at **4-5; *Frampton*, 297 N.E.2d at 428. Indiana courts have interpreted use of the word "solely" to mean that "any and all reasons for discharge must be unlawful in order to sustain a claim for retaliatory discharge." *Settele*, 2007 WL 1970954 at *5 (quoting *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind.App.1999)). Matthys can establish neither.

In particular, Matthys does not argue that Wabash's asserted reason for terminating her employment, Matthys's poor attendance, was pretextual. Matthys also does not contest the fact that she had accrued sufficient attendance points to be subject to termination under Wabash's attendance policy. As such, Matthys can not establish that Wabash's asserted reason for firing her was either dishonest or patently inconsistent with the evidence. A court's inquiry is limited to determining whether the employer gave an honest explanation for its decision. *Hudson*, 412 F.3d at 786; *Settele*, 2007 WL 1970954 at *4; *Crye*, 2008 WL 5111349 at *7. Consequently, because Wabash has asserted a non-retaliatory reason for Matthys's termination and because

Matthys has not established that reason was pretextual, Matthys can not establish that the *sole* reason for her termination was due to retaliation.

### III.  Conclusion

For the aforementioned reasons, this Court now **GRANTS** Wabash's motion for summary judgment.  [DE 29].  In addition, the Court **DENIES AS MOOT** Matthys's motions to strike.  [DE 37 and DE 40].  The Clerk is **INSTRUCTED** to term this case in Wabash's favor.

SO ORDERED.

ENTERED:  ___June 30, 2011___


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court